UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHANTI P.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

19-CV-6595-LJV
DECISION & ORDER

---

On August 13, 2019, the plaintiff, Shanti P. ("Shanti"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On April 3, 2020, Shanti moved for judgment on the pleadings, Docket Item 15; on July 31, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 20; and on August 21, 2020, Shanti replied, Docket Item 24.

For the reasons stated below, this Court grants Shanti's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Shanti argues that the ALJ erred in two ways.  Docket Item 15-1 at 1.  First, she argues that the ALJ improperly discounted her subjective complaints and failed to explicitly address whether her fibromyalgia met a listed impairment and therefore

2

rendered her disabled.  *Id.* at 19-26.  Second, Shanti argues that the ALJ failed to properly evaluate the opinion evidence in the record, resulting in a residual functional capacity ("RFC") determination that was unsupported by substantial evidence.  *Id.* at 26-35.  This Court agrees that the ALJ erred and, because that error was to Shanti's prejudice, remands the matter to the Commissioner.

## I. FIBROMYALGIA AND LISTING 14.09

In making a disability determination, the ALJ must engage in a five-step evaluation process.[3]  *See* 20 C.F.R. § 416.920(a).  At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 416.920(a)(4)(i).  If so, then at step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1").  § 416.920(a)(4)(iii).  If the claimant's impairments meet a listed impairment, the claimant is disabled.  *Id.*

At step two, the ALJ found that Shanti had several severe impairments, including fibromyalgia.  Docket Item 21-2 at 16.  The ALJ explained that although "[f]ibromyalgia is not a listed impairment," she "considered fibromyalgia as an aggravating factor to any other severe physical or mental impairment, that in combination would meet a listing."  *Id.*  But the ALJ then found that "no medical equivalence exists with any listing in Appendix 1 . . .," *id.*, and at step three she explicitly found that "[Shanti did] not have an impairment or combination of impairments that [met] or medically [equaled] the severity of one of the listed impairments."  *Id.* at 17.

---

[3] This Court assumes familiarity with the details of the evaluation process and will refer only to the steps necessary to explain its decision.

The burden is on the claimant to show that she meets the criteria for a particular listing.  *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  Accordingly, "[f]or a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is equivalent to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Solis v. Berryhill*, 692 F. App'x 46, 49 (2d Cir. 2017) (summary order) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (internal quotation marks omitted; emphasis in original)).

As the ALJ noted, fibromyalgia is not a listed impairment in Appendix 1.  *See* Docket Item 21-2 at 16; *see also* SSR 12-2P, 2012 WL 3104869, at *6 (S.S.A. July 25, 2012).  Nevertheless, when a claimant has been diagnosed with fibromyalgia, the ALJ still must determine whether the fibromyalgia, alone or in combination with other medically determinable impairments, medically equals a listing.  *See* SSR 12-2, 2012 WL 3104869 at *6.  And Social Security Administration rule 12-2P suggests that the listing most similar to fibromyalgia is Listing 14.09D.[4]  *See id.* (explaining that because

---

[4] For a claimant to show that her impairments are medically equivalent to Listing 14.09D, the claimant must show that she meets the following criteria:

> Repeated manifestations of inflammatory arthritis [as defined in 14.00D6], with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 14.09D.  The Listing of Impairments also explains that:

4

fibromyalgia is not a listed impairment, the ALJ "determine[s] whether [fibromyalgia] medically equals a listing (for example, Listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment").

The courts disagree about exactly what that rule means. At least one court in this district has held that SSR 12-2P *requires* an ALJ to consider Listing 14.09D in connection with a diagnosis of fibromyalgia. *See Lamb v. Berryhill*, 2018 WL 3342574, at *5 (W.D.N.Y. July 9, 2018) ("SSR 12-2P specifically directs that at step 3 of a disability analysis, the ALJ must determine whether the claimant's fibromyalgia medically equals a listing which, because there is no listing for fibromyalgia, would be Listing 14.09D."). Another court has found that "[a]lthough the ruling uses Listing 14.09D as an *example* of a Listing that the ALJ could consider, it does not mandate or even recommend that an ALJ is required to do so." *See Cruz Montas v. Comm'r of Soc. Sec.*, 2019 WL 1417219, at *7 (S.D.N.Y. Mar. 29, 2019) (emphasis in original); *cf. Chiles v. Colvin*, 2017 WL 2703654, at *3 (W.D.N.Y. June 23, 2017) ("At step three, the ALJ did not mention *any listed impairments* that he specifically considered, so it is impossible for this Court to determine if the ALJ considered the impact of fibromyalgia on the *various listings*.") (emphasis added).

---

> Listing-level severity in . . . 14.09D is shown by inflammatory arthritis that involves various combinations of complications (such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs) of one or more major joints in an upper or lower extremity (see 14.00C8) or other joints. Extra-articular impairments may also meet listings in other body systems.

*Id.* at 14.00D6(e)(ii)

5

Here, the ALJ did not explicitly address Listing 14.09D; instead, she simply said that Shanti's fibromyalgia did not meet "any listing." Docket Item 21-2 at 16-17. So this Court has no way of knowing whether the ALJ considered the specific listing that the rules suggest fits best with fibromyalgia. But this Court need not decide whether or not that was error because remand is required for a different reason. And on remand, the ALJ can, and should, make it clear that he or she considered the listing that the rules either require or encourage the ALJ to consider in matters involving fibromyalgia.

## II. DR. JACKSON'S OPINION

When determining a claimant's RFC,[5] an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques

---

[5] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error."  *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ assigned "little weight" to the opinion of Shanti's treating physician, Briani Jackson, M.D.  Docket Item 21-2 at 23-24.  In reaching that conclusion, the ALJ did not address *any* of the *Burgess* factors, let alone "'explicitly' apply" all of them.  *See id.* at 21, 23-24.  Instead, the ALJ explained that Dr. Jackson "declined to offer an opinion regarding [Shanti's] abilities to work, indicat[ing] instead that [Shanti] needed to undergo a functional capacity evaluation."  *Id.* at 23.  In other words, the ALJ found that Dr. Jackson's "opinion[s]" were not true medical opinions after all.  *Id*. at 23-24.

The ALJ was correct that not all statements from treating sources constitute medical opinions entitled to controlling weight.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what

7

[she] can still do despite impairment(s), and [her] physical or mental restrictions."[6]  20 C.F.R. § 404.1527(a)(1).  And as this Court has noted, an ALJ does not err by failing to explicitly address the *Burgess* factors before assigning less-than-controlling weight to the assessment of a treating physician that does not constitute an opinion.  *See Maddox v. Comm'r of Soc. Sec.*, 2020 WL 4735517, at *3 (W.D.N.Y. Aug. 14, 2020).

But the ALJ nevertheless erred by concluding that Dr. Jackson's medical source statements did not constitute medical opinions.  While it may be true that Dr. Jackson "declined to offer an opinion regarding [Shanti's] abilities to work" and found that Shanti needed "a functional capacity evaluation to determine specific work limitations," *see* Docket Item 21-2 at 23-24, Dr. Jackson's statements included medical opinions as well.  And the ALJ's failure even to address those medical opinions was error.

For example, Dr. Jackson's 2015 medical source statement opined that Shanti was unable to participate in activities except treatment or rehabilitation for an expected twelve months because of her "poorly controlled fibromyalgia and bipolar disorder" as well as her "[c]onstant pain in shoulders, neck, back, [and] legs."  Docket Item 21-7 at 190.  Likewise, Dr. Jackson's 2018 medical source statement found that Shanti "frequently"—that is, "34% to 66% of an 8-hour working day"—would suffer from " . . . pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks."  *Id.* at 573.  Those statements, among others, *see, e.g., id*. at 189, 573, "reflect judgments about the nature and severity of

---

[6] "Opinions on some issues, such as [an opinion that a claimant is 'disabled'" or 'unable to work'], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner . . . ."  20 C.F.R. § 404.1527(d)(1).

[Shanti's] impairment(s)"; for that reason, those statements are indeed medical opinions.  *See* 20 C.F.R. § 404.1527(a)(1).

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to Dr. Jackson's opinions.  *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").  The Court finds no such assurance here.

Based on the testimony of the vocational expert, if Dr. Jackson's opinions were given controlling weight, Shanti may well have been disabled.  Addressing a hypothetical limitation that would prevent a worker from "maintain[ing] attention for up to 20% of an 8-hour workday," the vocational expert testified that the limitation would "preclude the performance of unskilled work."  Docket Item 21-2 at 97-98.  She also testified that an employer would tolerate "no more than 10% [time] off task" in the workplace.  *Id.* at 98.  Those percentages are far below what Dr. Jackson opined about Shanti.

For all those reasons, the ALJ erred in her evaluation of Dr. Jackson's medical opinions, the error was not harmless, and remand is required.[7]

---

[7] The Court "will not reach the remaining issues," including whether the ALJ properly evaluated Shanti's subjective complaints regarding her fibromyalgia, the weight the ALJ assigned to the remaining opinions in the record, or whether the ALJ's findings are supported by substantial evidence "because they may be affected by the ALJ's

9

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 20, is DENIED, and Shanti's motion for judgment on the pleadings, Docket Item 15, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   May 20, 2021
         Buffalo, New York

                                                _____
                                                LAWRENCE J. VILARDO
                                                UNITED STATES DISTRICT JUDGE

---

treatment of this case on remand." See *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).